UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DUSTIN ALAN HODGDON,            )
                                )
    Plaintiff,                  )
                                )
v.                              )   1:11-cv-0077-MJK
                                )
SHIRLEY BARLOW,                 )
et al.,                         )
                                )
    Defendants                  )

## MEMORANDUM OF DECISION[1] ON
## UNOPPOSED MOTION FOR SUMMARY JUDGMENT

Dustin Hodgdon has filed a civil action complaining that Shirley Barlow, a former employee of Correctional Medical Services (CMS) at the Maine State Prison, violated his rights. He indicates that on February 7, 2011, he met with Barlow to talk about his mental health issues and Barlow took notes. Hodgdon alleges that Barlow gave these confidential notes (along with other notes pertaining to other inmates) to another inmate. Hodgdon describes himself as being "clinically violated" and maintains he has been experiencing problems with staff and other inmates as a consequence of the disclosure but does not give specifics. Hodgdon relates that Barlow admits to this professional malfeasance. He wants to be transferred to another facility where he is more secure regarding the integrity of his mental health counseling. He also seeks compensatory damages for his mental anguish. Recently I granted CMS's motion to dismiss. I now grant summary judgment based upon the unopposed summary judgment record submitted on Barlow's behalf.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

# DISCUSSION

*Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant[s are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). I draw all reasonable inferences in favor of Hodgdon, but where he bears the burden of proof, he "'must present definite, competent evidence' from which a reasonable jury could find in [his] favor." United States v. Union Bank For Sav. & Inv. (Jordan), 487 F.3d 8, 17 (1st Cir. 2007) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

Hodgdon has not presented any evidence in defense of the motion for summary judgment. However, this court,

> may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days. Rather, the court must determine whether summary judgment is "appropriate," which means that it must assure itself that the moving party's submission shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Advisory Committee Note to Rule 56 ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7 -8 (1st Cir. 2002). Although Hodgdon is provided some latitude as a pro se litigant, he must still defend his action within the context of the pleading rules. See, e.g., Collins v. Colorado Dept. of Corrections, Civ. No. 08-cv-02657-WYD-KMT, 2010 WL 254959, 8 (D. Colo. Jan. 15, 2010).

*Undisputed Facts*

In February 2011 Shirley Barlow, a Licensed Clinical Professional Counselor, was employed by Correctional Medical Services, Incorporated to provide mental health care services to clients incarcerated in the Maine State Prison. One technique Barlow used was to give inmates folded sheets of blank paper and encourage them to use the paper to write "dream journals," in which they could record their dreams, moods, anger patterns, and other thoughts that might prove to be clinically relevant.

On February 7, 2011, when Barlow went to a pod for individual counseling sessions with several clients, she forgot the stenographer's notebook she ordinarily took in with her, and she therefore had to take notes of those counseling sessions on some of the blank sheets of paper she had brought with her to distribute for use as dream journals. After the individual counseling sessions on February 7, 2011, Barlow distributed sheets of paper to be used as dream journals, all of which she thought were blank, as was her practice. Although Barlow did not realize it at the time, she handed one of her clients multiple sheets of paper that were not blank but rather had notes of some of the counseling sessions she had just completed, including one with Dustin Hodgdon.

Barlow's handwritten notes were not formal clinical notes that she intended to make part of her clients' clinical records, but rather were brief, summary notes that she typically used to refresh her recollection of certain details when completing her charting duties. Note-taking was an important tool in Barlow's practice in the high-security section of the prison, where Dustin Hodgdon was housed, because inmates there were not allowed to leave their pod, and Barlow needed the notes to refresh her memory when she returned from the pod to her office and could formally chart her client visits.

The notes of Barlow's encounter with Dustin Hodgdon contained only the following personal information: "Refer for physical. Panic Attacks. 6 liz y.o. daughter." Barlow's misplacement of the notes of this session with Dustin Hodgdon was completely inadvertent. As soon as Barlow was made aware of what she had done she apologized to all the inmates whose personal information appeared in her notes.

Barlow has never, and would never, deliberately disclose a client's confidences without authorization or what she believed to be a legally-sufficient reason, such as an imminent risk of harm.

*Merits Review*

Based upon the unopposed motion for summary judgment there is little doubt that Barlow's distribution of Hodgdon's confidential information was inadvertent, see Daniels v. Williams, 474 U.S. 327, 330–31 (1986), and that it comes nowhere near suggesting a violation of a constitutional magnitude either under the Fourteenth Amendment substantive due process standard or the Eighth Amendment deliberate indifference standard.[2]

With respect to any prospect of sending to a jury a "shocks the conscience" substantive due process claim for its consideration, this is a case that clearly does not justify trial on such a theory based on the undisputed summary judgment facts. See cf. McConkie v. Nichols, 446 F.3d 258 (1st Cir. 2006). The United States Supreme Court in County of Sacramento v. Lewis made it clear that to attach liability under this standard requires "something more than negligence." 523

---

[2] Barlow has primarily analyzed Hodgdon's complaint under these two constitutional rights. By not responding to the motion for summary judgment Hodgdon has not contested this. I agree with Barlow that, to the extent Hodgdon has alleged a claim regarding his constitutional right to privacy under the Fourteenth Amendment, he has not provided a basis for taking such a claim to trial. See Doe v. Magnusson, 1:04-civ-130-JAW, 2005 WL 758454, 3 -11 (D. Me. Mar. 21, 2005) (recommended decision), aff'd , 2005 WL 859272 (D. Me. Apr. 14, 2005).

4

U.S. 833, 849 (1998). "The burden to show state conduct that 'shocks the conscience' is extremely high, requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme.'" J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir.2005)). The inadvertent release of Barlow's notes regarding Hodgdon is certainly unfortunate but under the circumstance nothing near egregious or extreme. There is not even evidence from which to infer she acted in bad faith.

As for an Eighth Amendment deliberate indifference claim, it seems to be Hodgdon's assertion that the disclosure of the information put him in harm's way vis-à-vis other inmates and prison staff. See, e.g., Powell v. Schriver, 175 F.3d 107, 114 -15 (2d Cir. 1999). A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828-29 (1994) (citing Helling v. McKinney, 509 U.S. 25 (1993), Wilson v. Seiter, 501 U.S. 294 (1991), and Estelle v. Gamble, 429 U.S. 97 (1976)). Farmer, a case involving a failure to protect claim, explained:

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson, supra, 501 U.S., at 298; see also Hudson v. McMillian, supra, 503 U.S. [1,] 5[(1992)]; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," Rhodes [v. Chapman], 452 U.S. [337,] 347 [(1981)]. For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. See Helling, supra, 509 U.S., at 35.
> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson, 501 U.S., at 297 (internal quotation marks, emphasis, and citations omitted). To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." Ibid

511 U.S. at 834 (footnote omitted).  There is absolutely no evidence in the record before me that Barlow had a culpable state of mind at all, let alone one that is sufficient to meet the second prong of the Farmer analysis.  It is likewise true that there is no evidence that there was ever a risk of an assault by other inmates due to the disclosure of Hodgdon's self-report of a panic attack history.  Compare Farmer, 511 U.S. at 830 (petitioner was beaten and raped); id at 834 n.3 ("At what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes is a question this case does not present, and we do not address it.").  Hodgdon posits only a hypothetical risk to his immediate safety due to Barlow's turning over of his medical notes and a concern that his medical information might be disclosed in the future if he stays at the prison.  On this last score, the only remaining defendant in this action is Barlow and she no longer works at the prison as an employee of Correctional Medical Services.  (See CMS Mot. Dismiss at 2, Doc. No. 11, Page ID No.27.)   This Court obviously cannot enter a judgment against Barlow requiring her to transfer Hodgdon to another facility.

## CONCLUSION

For the reasons above I now grant judgment in favor of Barlow on all of Hodgdon's claims.

*So Ordered.*

July 22, 2011                                         /s/ Margaret J. Kravchuk
                                                     U.S. Magistrate Judge